a

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES ALLEN ROBINSON, Plaintiff | CIVIL ACTION NO. 1:16-CV-1058-P |
| VERSUS | JUDGE DRELL |
| SHERIFFS OFFICE, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (42 U.S.C. § 1983) of pro se Plaintiff James Allen Robinson ("Robinson") (#371450), filed *in forma pauperis*. Robinson is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Jackson Parish Correctional Center in Jonesboro, Louisiana. Robinson names as defendants Sheriff William Hilton, Warden Antoine Batiste, Lt. J.D. Aaron, Sgt. Ronald Goudeau, and Deputies Charles Gates, Lyndell Hall, Martravius Dorsey, Darnitha Hudson, Cassandra Carmouche, Medical Assistant Cristy Lnu, and NORTEC, LLC. Robinson complains that the defendants failed to protect him from another inmate and failed to provide timely medical care while Robinson was incarcerated at the Rapides Parish Detention Center ("RPDC"). Robinson also alleges that the defendants violated state tort law.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

I.    <u>Background</u>

Robinson alleges that he worked as an inmate trustee assigned to maintenance at RPDC from May 2015 until July 14, 2015. (Doc. 1, pp. 9-10; Doc. 9, p. 1). As a trustee, Robinson was housed in Dorm C, Zone 2. Robinson was required to perform some work in Zone 3 of the general population area, where he was threatened on unspecified dates because of his trustee status. (Doc. 1, p. 10).

Robinson alleges that on July 14, 2015, Deputy Dorsey informed Robinson that he was being moved to Dorm E in Zone 3. Robinson told Deputy Dorsey that he had previously been threatened in Zone 3, and Robinson asked to speak to someone else about the transfer. (Doc. 1, p. 10).

Deputy Dorsey radioed Lt. Aaron and Sgt. Goudeau, a shift supervisor. Neither official respond to the call. (Doc. 1, p. 10).

Deputy Dorsey then radioed Deputy Gates regarding Robinson's safety concern. Deputy Gates and Deputy Hall responded to the call. (Doc. 1, p. 10). Robinson asked to speak to a higher ranking official about the transfer, but Deputy Gates refused. (Doc. 1, p. 10).

Robinson requested placement in isolation in lieu of being transferred to Zone 3. Deputy Gates refused the request and "forcibly moved [Robinson] to Zone 3." (Doc. 1, p. 10).

When Robinson, Deputy Gates, and Deputy Hall arrived in Zone 3, several inmates yelled threats at Robinson and informed Deputies Gates and Hall that

Robinson would not be safe in the dorm. The deputies left Robinson in the dorm anyway. (Doc. 1, pp. 10-11).

Robinson walked to a glass window and continued to ask the deputies to remove him from the dorm. One inmate began to take Robinson's property. When Robinson attempted to retrieve his property, a physical altercation ensued. Several inmates rushed Robinson and kicked and beat him. (Doc. 1, p. 11).

Robinson alleges that Deputies Hall and Gates witnessed the attack directly, while Deputies Carmouche and Hudson observed the attack through the security cameras. None of the deputies attempted to stop the attack, which only ended when other inmates in Dorm E intervened. Deputies Gates and Hall eventually responded and moved Robinson from Dorm E to an isolation cell. (Doc. 1, p. 11).

Robinson alleges that, while Deputies Gates and Hall were escorting Robinson to the isolation cell, Robinson saw Medical Assistant Lnu. Robinson informed Defendant Lnu that his thumb could be broken. The assistant responded that Robinson should fill out a sick call form. (Doc. 1, p. 12).

The day after the attack, Robinson was transported to the hospital for x-rays. He was diagnosed with a fractured thumb and contusions to the chest and head. (Doc. 1, p. 13). Robinson's thumb was placed in a splint or cast, and he was prescribed pain medication. (Doc. 1, p. 13).

On July 25, 2015, Sgt. Goudeau conducted a search for contraband in Robinson's dorm. Sgt. Goudeau ordered Robinson to remove his splint and cast. (Doc.

1, p. 13). Robinson had to be transported back to the hospital to have the cast replaced. (Doc. 1, p. 13).

II.   **Law and Analysis**

    A.   **Robinson's official capacity claims should be dismissed.**

Robinson sued the defendants in their individual and official capacities. A suit brought against a defendant in his official capacity is, effectively, a suit against the governmental unit that employs the defendant. See Monell v. Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978); Brooks v. George County, Ms., 77 F.3d 834, 1996 WL 84650, *5 (5th Cir. 1996). Thus, Robinson's official capacity claims against the defendants are actually claims against Rapides Parish. See Jacobs v. W. Feliciana Sheriff's Dep't, 228 F.3d 388, 392 (5th Cir. 2000) ("Suit against Sheriff Daniel in his official capacity is a suit against the Parish.").

In order to hold a municipality or a local government unit liable under § 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. See Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997). To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that his injuries resulted from the execution of an official policy or custom. See id.

The description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts. "A plaintiff may not infer a policy merely because harm resulted from some interaction

with a governmental entity." <u>Colle v. Brazos County, Texas</u>, 981 F.2d 237, 245 (5th Cir.1993). A plaintiff must identify the policy or custom that allegedly caused the deprivation of his constitutional rights. <u>See</u> <u>Murray v. Town of Mansura</u>, 76 Fed. App'x 547, 549 (5th Cir. 2003); <u>Treece v. Louisiana</u>, 74 Fed. App'x 315, 316 (5th Cir. 2003).

Robinson has not identified a policy or custom that caused the deprivation of his constitutional rights. Thus, the official capacity claims should be dismissed.

**B.**   <u>**Robinson received constitutionally adequate medical care.**</u>

Robinson alleges that Medical Assistant Cristy Lnu and her employer NORTEC, LLC, are liable because Robinson had to wait one day for medical care. Robinson states that Medical Assistant Lnu observed his swollen thumb in the hallway, but "indicated that she was not able to assist [Robinson], and instructed him to file a sick call." (Doc. 1, p. 12). The following day, Robinson submitted a sick call and was examined and "immediately routed" to the hospital for treatment. (Doc. 1, p. 12).

The Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)). The mere delay of medical care can constitute an Eighth

Amendment violation only "if there has been deliberate indifference [that] results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Robinson waited less than 24 hours for emergency medical treatment. Treatment within 24 hours of Robinson's injury does not evidence the high standard required to prove deliberate indifference by an intentional denial of medical treatment or a wanton disregard for a serious medical need. See Kelly v. Jackson Par. Corr. Ctr., No. 3:13-CV-2518, 2014 WL 869527, at *5 (W.D. La. Mar. 5, 2014); Taylor v. Bexar Cty., No. 10-045, 2011 WL 759549, at *4 (W.D. Tex. Feb. 23, 2011). Moreover, Robinson does not allege that the delay itself resulted in substantial harm. See Mendoza, 989 F.2d at 195. Robinson's claims against Medical Assistant Lnu and NORTEC, LLC should be dismissed.

### C.   Lt. Aaron and Sgt. Goudeau did not fail to protect Robinson.

Robinson alleges that Deputy Dorsey, Lt. Aaron, Sgt. Goudeau, Deputy Hall, Deputy Hudson, and Deputy Carmouche are liable for the attack on Robinson by other inmates. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). In particular, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. See Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. See Adames, 331 F.3d at 512 (citing Farmer, 511 U.S. at 834.  Prison officials can be held liable for their failure to protect

6

an inmate only when they are deliberately indifferent to a substantial risk of serious harm. See id.

A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. Farmer, 511 U.S. at 837. A prison official "knows of" an excessive risk only if: (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he, in fact, "draw[s] the inference." Adames, 331 F.3d at 512 (citing Farmer, 511 U.S. at 839-40). In other words, in order to be deliberately indifferent, a prison official must be subjectively aware of the risk.  See id.

Robinson allegedly informed Deputy Dorsey that he had previously been threatened in Zone 3. (Doc. 1, p. 10). Inmates threatened Robinson in front of Deputies Gates and Hall and told the deputies that Robinson would not be safe in the dorm. The deputies left Robinson in the dorm anyway. (Doc. 1, pp. 10-11).

Robinson also alleges that Deputies Hall and Gates witnessed the attack directly, while Deputies Carmouche and Hudson observed the attack through the security cameras. None of the deputies attempted to stop the attack. (Doc. 1, p. 11).

Robinson does not present any factual allegations of deliberate indifference involving Lt. Aaron and Sgt. Goudeau, who merely failed to respond to Deputy Dorsey's call prior to the attack. (Doc. 1, p. 10). Therefore, the claims against Lt. Aaron and Sgt. Goudeau should be dismissed.

D.   **Robinson cannot recover under § 1983 for vicarious liability, and he has failed to state a constitutional claim for supervisory liability against Sheriff Hilton, Warden Batiste, and Sgt. Goudeau.**

Robinson alleges that some defendants are vicariously liable for the acts of other defendants. "Vicarious liability does not apply to § 1983 claims." Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), cert. denied, 514 U.S. 1107 (1995).  Therefore, all of Robinson's § 1983 claims related to vicarious liability should be denied and dismissed.

Robinson claims that Sheriff Hilton, Warden Batiste, and Sgt. Goudeau are liable as supervisors of the deputies at RPDC. Supervisors may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivations; or (2) they implement unconstitutional policies that causally result in the plaintiff's injuries. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. denied, 508 U.S. 951 (1993). Robinson does not allege that Sheriff Hilton, Warden Batiste, and Sgt. Goudeau were involved in the attack. He claims that they implemented unconstitutional policies by refusing to terminate the defendants, negligently hiring the defendants, failing to properly supervise and train the defendants, understaffing, and by placing Robinson in general population.

Robinson's allegations regarding the failure to train and supervise are conclusory.  Robinson has not provided any factual allegations indicating that the supervisors either failed to supervise or train the subordinate officials, or that such alleged failure to train or supervise resulted in deliberate indifference. See Smith v.

8

Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003); Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003).

Robinson has not identified an unconstitutional policy implemented by any of the supervisory defendants that resulted in his injuries. Robinson's claim that Sheriff Hilton and Warden Batiste had a policy of condoning, ratifying, and encouraging violence in Zone 3 is conclusory, as is Robinson's claim that Sheriff Hilton and Warden Batiste failed to conduct adequate security checks and appropriately classify prisoners. (Doc. 1, p. 16). In cases invoking 42 U.S.C. § 1983, the claimant must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); Morrison v. City of Baton Rouge, 761 F.2d 242 (5th Cir. 1985) (citing Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985) (we consistently require the claimant to state specific facts, not merely conclusory allegations).

For the foregoing reasons, Robinson has failed to state a constitutional claim for supervisory liability against Sheriff Hilton, Warden Batiste, and Sgt. Goudeau.

E.    **State Tort Claims**

Robinson alleges that the defendants are liable for his injuries under Louisiana's negligence laws. No recommendation is made at this time as to the state negligence claims because, if the § 1983 claims are dismissed, the Court may decline to exercise jurisdiction over the state negligence claims.

III.  <u>Conclusion</u>

For the foregoing reasons,

IT IS RECOMMENDED that Robinson's vicarious liability and official capacity claims be DENIED and DISMISSED as to all Defendants.

IT IS RECOMMENDED that Robinson's § 1983 claims against the following defendants be DENIED and DISMISSED: Medical Assistant Cristy Lnu, NORTEC, LLC, Lt. Aaron, Sheriff Hilton, and Warden Batiste.

IT IS RECOMMENDED that all claims against Sgt. Goudeau be DENIED and DISMISSED, except for Robinson's Eighth Amendment claim for the removal of his cast on July 26, 2015.

The remaining claims will be served in accordance with a separate Court order, except for Plaintiff's state tort claims against Medical Assistant Cristy Lnu, NORTEC, LLC, Lt. Aaron, Sheriff Hilton, and Warden Batiste, because, if Plaintiff's remaining § 1983 claims are dismissed, the Court may decline to exercise jurisdiction over the state tort claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 5th day of October, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge