c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES ALLEN ROBINSON, Plaintiff | CIVIL ACTION NO. 1:16-CV-1058-P |
| VERSUS | JUDGE TRIMBLE |
| SHERIFF'S OFFICE, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATIONS

Before the Court are: (1) a Motion for Summary Judgment (Doc. 51), filed by pro se Plaintiff James Allen Robinson ("Robinson"); and (2) a Motion for Summary Judgment (Doc. 54), filed by Defendant, Sergeant Ronald Goudeau ("Goudeau"). Robinson's Motion for Summary Judgment (Doc. 51) should be denied because he failed to present any evidence to meet his burden of proof under Fed. R. Civ. P. 56. Further, because there is no genuine issue of material fact whether Goudeau was deliberately indifferent to Robinson's serious medical needs, Goudeau's Motion for Summary Judgment (Doc. 54) should be granted.

I.   Background

Robinson filed a civil rights complaint (42 U.S.C. § 1983), *in forma pauperis*. Robinson is an inmate in the custody of the Louisiana Department of Corrections ("DOC"), incarcerated at David Wade Correctional Center ("DWCC") in Homer, Louisiana. Robinson named Defendants Sheriff William Hilton ("Hilton"), Warden Antoine Batiste ("Batiste"), Lieutenant J.D. Aaron ("Aaron"), Goudeau, and Deputies Charles Gates, Lyndell Hall, Martravius Doresey ("Dorsey"), Darnitha Hudson,

1

Cassandra Carmouche, Medical Assistant Cristy Lnu ("Lnu"), and NORTEC, LLC ("Nortec") (collectively "Defendants"). (Doc. 1). Robinson claims Defendants failed to protect him from another inmate and failed to provide timely medical care while Robinson was incarcerated at the Rapides Parish Detention Center ("RPDC"). (Doc. 1). Robinson also alleges Defendants violated state tort law.

Robinson was attacked by other inmates at RPDC. (Doc. 1). Robinson alleges the attack took place on July 14, 2015. (Docs. 1, 9). Robinson was transported to the hospital for x-rays, and was diagnosed with a fractured thumb and contusions to the chest and head. (Doc. 1). Robinson's thumb was placed in a splint or cast, and he was prescribed pain medication. (Doc. 1).

Robinson claims that, on July 24, 2015, a search for contraband was conducted in Robinson's dorm. (Docs. 1, 9). Robinson alleges Goudeau ordered the removal of the cast during the search. (Docs. 1, 9). Robinson alleges he had to be transported back to the hospital to have the cast replaced. (Doc. 1).

Robinson's vicarious liability and official capacity claims as to all Defendants have been denied and dismissed. (Doc. 19). Robinson's § 1983 claims against Defendants Lnu, Nortec, Aaron, Hilton, and Batiste have been denied and dismissed. (Doc. 19). All claims against Goudeau have been denied and dismissed, except for Robinson's Eighth Amendment claim for the removal of his cast on July 26, 2015, and his related negligence claim. (Doc. 19). The remaining claims are Robinson's state tort claims, and Robinson's remaining § 1983 claims against Goudeau.[1] (Doc. 10).

---

[1] This Court ordered service of summons of Robinson's remaining claims, except for Robinson's state tort claims against Lnu, Nortec, Aaron, Hilton, and Batiste, because, if Robinson's remaining § 1983

Goudeau answered the Complaint and Amended Complaint, asserting various affirmative defenses. (Doc. 27).

II. <u>Law and Analysis</u>

    A. <u>Standards governing Motion for Summary Judgment.</u>

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v.</u>

---

claims are dismissed, this Court may decline to exercise jurisdiction over the state tort claims. (Docs. 10, 20). The Court ordered service of summons on Goudeau, and ordered Goudeau to file a response to the Eighth Amendment and negligence claims. (Doc. 20).

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Murphy, 174 F.3d 530, 533 (5th Cir.), cert. denied, 528 U.S. 906 (1999) (internal citations omitted). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the nonmovant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact. Herrera v. Millsap, 862 F.2d 1157, 115 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).

Additionally, where a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the Plaintiff to raise facts that dispute the defendant's assertion of qualified immunity." Estate of Pollard v. Hood Cnty., Tex, 579 F.App'x 260, 264 (5th Cir. 2014) (per curiam). The court must still view all facts and make all reasonable inferences in light most favorable to the plaintiff. Id. But "plaintiff must produce evidence that presents a genuine issue of material fact that (1) the defendants' conduct amounts to a violation of the plaintiff's constitutional right; and (2) the defendants' actions were 'objectively unreasonable in light of clearly

4

established law at the time of the conduct in question." Id. (quoting Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012). cert. denied, 133 S.Ct. 119 (2012). If the plaintiff fails, the motion for summary judgment should be granted. Estate of Pollard, 579 F.App'x at 264.

B. Qualified Immunity

Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)). In determining whether an official enjoys qualified immunity, the Court must determine: (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right; and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known. Id. (citing Hope v. Pelzer, 536 U.S. 730 (2002)).

C. Deliberate Indifference

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

5

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with "deliberate indifference" to the serious medical needs of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference "is an extremely high standard to meet." Gobert, 463 F.3d at 346 (citation omitted). A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health and safety" and disregards that risk. Farmer, 511 U.S. at 837.

First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind – deliberate indifference to a prisoner's constitutional rights – to be subject to § 1983 liability. See Farmer, 511 U.S. at 834. The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. Id.

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (citing Domino v. Tex. Dep't of Crim. J., 239 F.3d 752, 756 (5th Cir. 2001)).

A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d

6

176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). But a decision of whether to provide additional medical treatment is a classic example of a matter left for medical judgment. See Gobert, 463 F.3d at 347; Domino, 239 F.3d at 756. "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. Dekalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985).

A prisoner's dissatisfaction with the care choices made by prison medical personnel does not, on its own, present a constitutional violation. Sama v. Hannigan, 669 F.3d 585, 590 (5th Cir. 2012) (citing Gobert, 463 F.3d at 346). Negligence – even gross negligence – does not implicate the Constitution and does not provide a basis for a § 1983 claim. Farmer, 511 U.S. at 836. ("[D]eliberate indifference entails something more than mere negligence."). Prisoners are not entitled to the "best medical care money can buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

D. **Robinson's Motion for Summary Judgment should be denied because he failed to establish his initial burden of proof as movant under Fed. R. Civ. P. 56.**

Robinson filed a one-page motion for summary judgment. (Doc. 51). However, the motion was not accompanied by a memorandum in support required by Fed. R. Civ. P. 56(c), and this Court's Order (Doc. 20). Robinson did not cite to any part of the record in his motion other than Goudeau's answer, in which Goudeau admitted removing the splint. (Doc. 51). Robinson did not include supporting evidence or documents with his motion. Fed. R. Civ. P. 56(c). Robinson did not include a

7

separate, short and concise statement of material facts as to which he contends there is no genuine issue to be tried, as required by Local Rule 56.1. Robinson failed to meet his initial burden of proof as movant under Fed. R. Civ. P. 56. Thus, Robinson's Motion for Summary Judgment (Doc. 51) should be denied.

### E. Robinson has not raised a genuine issue of material fact regarding deliberate indifference to his serious medical needs.

Robinson claims Goudeau forcefully removed his splint, causing him aggravation of his broken thumb and pain. (Doc. 1, 9). To defeat Goudeau's summary judgment, Robinson must produce evidence that presents a genuine issue of material fact that Goudeau's conduct amounts to a violation of Robinson's constitutional rights. Estate of Pollard, 579 F.App'x at 264. Robinson must show a genuine issue of material fact that Goudeau exhibited a conscious disregard of a risk of serious harm. Farmer, 511 U.S. at 834. In other words, Robinson must show Goudeau was aware that removal of the splint would cause substantial risk of serious harm to Robinson.

Goudeau presented a statement of undisputed facts, medical records, and affidavits in support of his motion. The Court finds the following facts are undisputed:

1) Robinson was wearing a fiberglass splint wrapped in an ace bandage.
2) He received the splint on July 15, 2015.
3) He was told he was going to have the splint for six to eight weeks.
4) During a "shakedown," Goudeau ended up taking the whole ace bandage off, took the splint off, and then searched through the cotton wrap on Robinson's arm.
5) After conducting his search, Goudeau handed the ace bandage and splint back to Robinson.
6) Within minutes of removing the splint, Robinson was sent to medical.

8

7) The nurse at medical told Robinson she was not a doctor, and that she was not equipped or licensed to splint a broken bone.
8) The nurse told the warden that Robinson needed to be taken to the hospital to get his arm re-wrapped after removal by correctional staff.
9) The warden called for transportation and asked to get a car as fast as they could.
10) Robinson was taken to St. Frances Cabrini Hospital, where he waited approximately forty-five minutes to be taken to be x-rayed.
11) Robinson's wait for medical care on July 24, 2015 was not as long as his wait for medical care on July 15, 2015, when he first had the broken bone in his hand.
12) He was taken to University Hospital in Lafayette on August 5, 2015, at which time Robinson was told his fracture was healing.
13) At that visit, Robinson was told by Dr. Davis that there was no need for him to wear the splint on his arm, so he did not use a splint after that visit.
14) An x-ray on August 5, 2015, showed that the bone was healing, and everything looked lined up like it should.
15) Robinson declined to return for his follow-up care on September 2, 2015 because he had been told by the doctor there was nothing else she was able to do.
16) All dorms within DC III, including the dorm within which Robinson was housed, are subject to shakedown searches, where the entire dorm and all inmates are searched for contraband, including drugs and weapons.
17) Random searches of all dorms and inmates are necessary in order to locate contraband that may present health and safety issues to inmates and deputies.
18) Dorm and cell searches may also be ordered in response to specific information concerning possession of and/or the location of contraband.
19) On July 24, 2015, at approximately 10:30 hours, Goudeau approached and instructed Robinson to take off his clothing for a strip search.
20) Goudeau observed Robinson's splint on his right arm made up of a hard molded splint wrapped with an ace bandage.
21) When Goudeau did not find any contraband on Robinson, he was allowed to get dressed.

(Docs. 59, 59-4, 59-7, 64).

Goudeau attested that Robinson kept synthetic marijuana, also known as "Mojo," wrapped inside his ace bandage. (Doc. 59-4). Robinson disputes this fact, asserting that he had never been suspected of or received write-ups for a contraband

9

violation. (Doc. 64). However, the record shows Robinson has been written up for a contraband violation for a cigarette lighter, and his medical records show treatment for a suspected overdose of drugs, including "Mojo." (Docs. 31, 59-1, 59-3).

Goudeau also attested that upon inspecting the outer part of the ace bandage it looked to Goudeau as if the arm had been re-wrapped from the way it had been originally wrapped at the hospital. (Doc. 59-4). Goudeau states he instructed Robinson to slowly unwrap the ace bandage for the search. (Doc. 59-4). Goudeau indicates he searched the ace bandage and splint as Robinson unwrapped his arm. Goudeau avers the wrap had an odor that smelled like Mojo, a smell familiar to him based on his experience of other offenders using Mojo in DC III. (Doc. 59-4). Goudeau stated he escorted Robinson to the medical examination room so the splint could be re-wrapped by the on-duty nurse. (Doc. 59-4). Goudeau claims that, to his knowledge, Robinson did not suffer any injury or re-injury to his arm during the search. (Doc. 59-4). Robinson argues these assertions – the same assertions made by Goudeau in a written response to the warden regarding the incident – are fabrications. (Doc. 64).

Goudeau asserts it is undisputed that there is no evidence he knew his actions would cause injury, and the medical records show the removal of the splint did not cause injury or slow or affect his healing. (Doc. 59-4). Goudeau also asserts it is undisputed that there is no evidence that he harbored any ill-will toward, or was reckless or callous as to the rights of, Robinson. (Doc. 59-4).[3]

---

[3] The reasonable suspicion standard applies to prison visitors and prison staff. Rouse v. Texas Dept. of Crim. Justice Institutional Div., 479 Fed.Appx. 612 (5th Cir. 2012), and cases cited therein. It does not apply to visual body cavity searches of inmates because the search is justified by a legitimate penological interest in prison security. Bell v. Wolfish, 441 US 520, 558 (1979). Prison officials are

The record shows, and it is undisputed, that Goudeau was aware that Robinson had a hard splint wrapped in an ace bandage, which he removed for inspection for contraband. (Docs. 1, 9, 27, 59-7). The deliberate indifference standard "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or *intentionally* interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (internal citations omitted) (emphasis added). Robinson presented his medical records as evidence that he was not to remove the splint to protect the broken thumb, and that the splint was to be removed by his doctor. (64-1). Robinson's medical records show that the splint was for immobilization and consisted of fiberglass and an ace wrap. (Doc. 64-1). His records also show that his patient instructions were given to the police upon discharge after receiving the splint. (Doc. 64-1).

However, there is no showing that Goudeau was given the instructions, or that he had any personal knowledge of the instructions regarding the splint, whether removable or not. Goudeau attested that Robinson was suspected of contraband, and it appeared his ace bandage had been removed since initial application of his splint.

---

entitled to wide-ranging deference for their policies designed to maintain institutional security. Id. Under appropriate circumstances, visual body cavity searches of prisoners can be constitutionally reasonable. Johnson v. Scott, 31 Fed.Appx. 836, * *1 (5th Cir. 2002) (citing Elliott v. Lynn, 38 F.3d 188, 191 (5th Cir.1994)).

In Bell, the Supreme Court stated, "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record . . . and in other cases." Visual body-cavity inspections conducted in the manner contemplated by the prison rules can be conducted on less than probable cause and do not constitute punishment since they are reasonable responses to legitimate security concerns. Bell, 441 U.S. at. 559.

Within minutes of him removing the splint and inspecting it, Robinson was sent to medical for re-wrapping. Robinson's medical records do not show he suffered any new injury.[4] Although Robinson shows that he was prescribed additional pain medication after the removal of his splint by Goudeau, his medical records and deposition show that he was able to remove his splint sooner than the originally prescribed time frame. (Docs. 59-1, 59-2).

To establish an Eighth Amendment violation, Robinson must not only demonstrate Goudeau was aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also show that Goudeau had drawn the inference. Farmer, 511 U.S. at 837. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." Domino, 239 F.3d at 756. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001). Viewing the facts in a light most favorable to Robinson, Robinson has established no genuine issue of material fact that Goudeau was deliberately indifferent to Robinson's serous medical needs. Robinson has not met his burden of showing a constitutional violation occurred, and Goudeau is entitled to qualified immunity.

---

[4] The Court notes that one could expect possible aggravation or onset of pain upon inspection of the splint or cast, even absent removal. Robinson has not shown he would have suffered any more harm than if Goudeau had manipulated the splint to look for contraband. Robinson's records show "alignment has not significantly changed since previous study." (Doc. 59-3).

12

F.  State Law Claim

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); see Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). As a general rule, state claims should be dismissed when the federal claims to which they are pendent are dismissed. Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992). The Louisiana state court may analyze this claim under a duty-risk analysis. Under the circumstances of this case, that analysis is better left to the state court. Accordingly, Robinson's state negligence claims should be dismissed without prejudice.[5]

III.  Conclusion

Based on the foregoing,

IT IS RECOMMENDED that Robinson's Motion for Summary Judgment (Doc. 51) be DENIED.

IT IS FURTHER RECOMMENDED that Goudeau's Motion for Summary Judgment (Doc. 54) be GRANTED as to Robinson's § 1983 claims and Robinson's negligence claim against Goudeau.

IT IS FURTHER RECOMMENDED that Robinson's § 1983 claims against Goudeau be DISMISSED WITH PREJUDICE, and that Robinson's remaining negligence claims be DISMISSED WITHOUT PREJUDICE.

---

[5] The Court notes Robinson's state tort claims against Lnu, Nortec, Aaron, Hilton, and Batiste were never served. (Doc. 10).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this __2nd__ day of March, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge